UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARIA D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01690-TAB-JPH |
| | ) | |
| KILOLO KIJAKAZI[1], Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW**

**I.      Introduction**

Plaintiff Maria D. brings this action for judicial review challenging the Social Security

Administration's denial of her application for disability insurance benefits.  [Filing No. 18.]

Plaintiff contends generally that the Administrative Law Judge committed reversible error in

assessing a residual functional capacity that was unsupported by substantial evidence.

Specifically, Plaintiff asserts that the ALJ erroneously (1) placed great weight on the opinions of

state agency physicians, who never saw the most significant medical imaging and clinical

findings, and (2) failed to properly consider and evaluate opinion evidence from Plaintiff's

treating physicians.  The Commissioner argues that the ALJ did not model Plaintiff's RFC

finding on the opinion of one doctor, but on the record as a whole, and assessed greater limits

than the state agency physicians to accommodate Plaintiff's symptom allegations and the later-

admitted evidence.  As discussed below, the ALJ impermissibly played doctor when he

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from
his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became
the Defendant in this case when she was named as the Acting Commissioner of the SSA.

unilaterally determined the additional evidence submitted at the hearing level supported his decision without summoning a medical expert. Therefore, remand is appropriate.

## II.    Background

Plaintiff filed an application for disability insurance benefits in December 2014, alleging disability beginning in March 2013. The SSA denied Plaintiff's claim for disability and disability insurance benefits initially and upon reconsideration. Following a hearing, an ALJ denied Plaintiff's disability benefits in 2017. [Filing No. 15-2, at ECF p. 11.] Plaintiff subsequently filed a complaint with this Court, which remanded Plaintiff's claim for further proceedings under sentence four of 42 U.S.C. § 405(g). [Filing No. 15-14, at ECF p. 51.] On remand, Plaintiff appeared with counsel and testified before an ALJ at a video hearing in January 2020. [Filing No. 15-13, at ECF p. 39.] In February 2020, the ALJ issued a partially favorable decision, finding disability as of June 11, 2018, but not prior to that date. [Filing No. 15-13, at ECF p. 11-29.]

In reaching that partially favorable decision, the ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 404.1520(a). First, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023. Subsequently, at step one, the ALJ determined that Plaintiff engaged in substantial gainful activity during the following periods: November 2013-December 2013, March 2014-July 2014, and November 2014. However, the ALJ also noted that there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine. [Filing No. 15-13, at ECF p. 15.]

At step three, the ALJ determined that since December 1, 2014, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Before reaching step four, the ALL found that since December 1, 2014, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except

> [Plaintiff] can never climb ladders, ropes, or scaffolds; can only occasionally perform all other postural activities; must be allowed to alternate between sitting and standing at the work station no more frequently than every 60 minutes; can frequently reach with the bilateral upper extremities; can frequently perform rotation and extension of the neck; is limited to work at the moderate or lower noise environment; should not work around dangerous moving machinery; and is limited to simple, routine tasks.

[Filing No. 15-13, at ECF p. 18.]

At step four, the ALJ determined that Plaintiff has been unable to perform any past relevant work since December 1, 2014.  The ALJ also noted that prior to the established disability onset date, Plaintiff was an individual closely approaching advanced age, and on June 11, 2018, Plaintiff's age category changed to an individual of advanced age.  [Filing No. 15-13, at ECF p. 27.]  The ALJ also noted Plaintiff had a limited education and was able to communicate in English.  Finally, at step five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, that prior to June 11, 2018, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, specifically: sorter, inspector, and assembler.  [Filing No. 15-13, at ECF p. 28.]  However, the ALJ also found that beginning on June 11, 2018, considering the same factors, there were no jobs that exist in significant numbers in the national economic that Plaintiff could perform.  Thus, the ALJ concluded that Plaintiff was not disabled prior to June 11, 2018, but became disabled on that date

and has continued to be disabled through the date of this decision.  Plaintiff has once again

appealed the ALJ's decision to this Court.

## III.    Discussion

Plaintiff's main argument centers on the fact that the ALJ gave great weight to the

opinions of the state agency medical consultants, who never saw significant medical imaging and

clinical findings.  While the state agency physicians assessed that Plaintiff was capable of a light

RFC, they did not evaluate nearly five years of evidence, including Plaintiff's November[2] 2016

lumbar MRI and April[3] 2018 cervical MRI.  Plaintiff's November 2016 lumbar MRI indicated

"overall significant central stenosis" at L2-L3.  [Filing No. 15-12, at ECF p. 49.]  Plaintiff's April

2018 cervical MRI indicated a disc bulge and spurring which slightly flattens the thecal sac at

C5-C6.  [Filing No. 15-18, at ECF p. 50.]  In addition, Plaintiff's more recent medical records

that the state agency consultants did not review included multiple positive straight leg raise tests,

observances of "facet loading" and "antalgic gait," and absent or reduced reflexes in the lower

extremities.  [Filing No. 15-10, at ECF p. 74, 76, 78; Filing No. 15-12, at ECF p. 102; and Filing

No. 15-11, at ECF p. 132.]

> In relation to the state agency medical consultants, the ALJ stated:
>
> State agency medical consultants at the initial and reconsideration levels opined
> that the claimant was limited to light work with postural limitations consistent
> with those set forth in this decision (Exhibits 1A, 3A).  The undersigned affords
> great weight to these opinions because they are supported by explanations

---

[2] Plaintiff refers to a March 2016 lumbar MRI.  [Filing No. 18, at ECF p. 18.]  However, the
record indicates Plaintiff had a cervical MRI in March 2016, and a lumbar MRI in November
2016.  [Filing No. 15-9, at ECF p. 40-41; Filing No. 15-12, at ECF p. 49.]  It is the November
2016 lumbar MRI that contains the finding of "significant central stenosis" that Plaintiff
references, so that is where the Court focuses its attention.

[3] Again, Plaintiff's brief mistakenly references a March 2018 cervical MRI [Filing No. 18, at
ECF p. 18], but Plaintiff's cervical MRI in 2018 occurred in April.  [Filing No. 15-18, at ECF p.
51.]

referencing the medical evidence and consistent with the record as a whole. (See, e.g., Ex 10F/2, 7, 11; 11F/62; 19F/4; 27F/13.) Nonetheless, the undersigned finds the claimant should be afforded the option to alternate between sitting and standing every 60 minutes based on the periodic exam findings of positive straight leg raise tests and a mildly antalgic gait.

[Filing No. 15-13, at ECF p. 26.] Plaintiff contends that the ALJ committed reversible error in granting great weight to and substantially adopting the RFC assessed by the state agency consultants, since those consultants never considered Plaintiff's more recent scans or the multitude of other clinical findings, noted above, which indicated a worsening of Plaintiff's symptoms and need for greater exertional limitations. Plaintiff further argues that the scans, for the first time, demonstrated etiology the SSA considers to be an evidentiary threshold with regard to its listing of presumptive disability for disorders of the spine. [Filing No. 18, at ECF p. 18.] In response, the Commissioner argues that the ALJ modeled his RFC finding not on the opinion of any one doctor but rather on the record as a whole, and points out that the ALJ assessed greater limits than the state agency physicians. To be sure, the ALJ included additional limitations, including alternating between sitting and standing no more frequently than every 60 minutes, environmental limits against exposure to hazards and noise, and limits on reaching and neck movements, to accommodate Plaintiff's symptom allegations and the evidence that came in after the stage agency consultants' opinions. [Filing No. 21, at ECF p. 8.]

However, as Plaintiff correctly argues, the state agency consultants did not assess this material evidence, including the multitude of other clinical examination findings that indicated worsening in Plaintiff's symptoms. Nor did the ALJ seek medical expert review of the 2016 or 2018 MRIs. The Seventh Circuit has repeatedly found error when an ALJ impermissibly plays doctor and determines, without seeking medical input, the significance of medical findings. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (ALJ "impermissibly assessed the

MRI report on his own without the assistance of a medical expert.  We have said repeatedly that an ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny."  (Internal citation, quotation marks, and brackets omitted)); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (ALJ not qualified to determine on his own whether MRI results corroborated the claimant's complaints "without the benefit of an expert opinion").  *See also Kemplen v. Saul*, 844 Fed. App'x 883, 888 (7th Cir. 2021) ("[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion."); *Sherry R. v. Saul*, No. 1:20-cv-1116-TAB-TWP, 2021 WL 1884426, at *3 (S.D. Ind. May 11, 2021) ("Plaintiff contends that without any medical expert opinion to consider, the ALJ impermissibly played doctor by interpreting the medical records and producing resultant functional capacity limitations on his own.  The Court agrees.").

The Commissioner asserts that the ALJ discussed the MRIs from 2016 and 2018 "at length" and claims those scans were interpreted by physicians who ordered the tests and that they found no overt central stenosis and no nerve root impingement in the neck or spine.  [Filing No. 21, at ECF p. 10.]  Thus, the Commissioner argues that "Plaintiff is mistaken that the ALJ needed further expert review of these medical findings from MRI scans, since the doctors who ordered them provided enough explanation of the test results, and their conclusions showed no further limits were demonstrated by the MRI scans[.]"  [Filing No. 21, at ECF p. 10.]  However, the Commissioner provides no citations to any case law recognizing that the initial interpretation of the MRIs is enough.  Plaintiff notes that in *McHenry* and *Akin* the claimants' doctors also interpreted the imaging and provided reports of specific etiology, yet the Seventh Circuit still held that the ALJ impermissibly interpreted the medical records himself without the assistance of a medical record.  *See, e.g., McHenry*, 911 F.3d at 869-70 (April 2014 MRI showed McHenry

had multiple impinged nerve roots in addition to spinal cord compression; ALJ erred in comparing the results with earlier treatment records on his own without assistance of medical expert); *Akin*, 887 F.3d at 316-17 (nurse practitioner assessed Akin as having significant neck and low back pain and scheduled MRI, which showed moderate to severe spinal canal stenosis and worsening disk herniation; ALJ impermissibly played doctor finding MRI results consistent with impairments without expert opinion interpreting the results in the record).

Moreover, the ALJ's decision cherry-picks the facts in relation to these exams. In relation to the November 2016 MRI, the ALJ noted that it "revealed 'some mild degenerative change greatest at the L4-L5 level causing some mild lateral recess stenosis without overt central stenosis or foraminal stenosis' which was 'essentially unchanged' from the previous MRI." [Filing No. 15-13, at ECF p. 21.] However, the ALJ completely omitted the finding from that MRI indicating overall significant central stenosis at L2-L3. [Filing No. 15-12, at ECF p. 49.] In relation to the April 2018 MRI, the ALJ noted that it "showed fairly stable and minimal spondylosis essentially only at C5-6, where there was no more than slight flattening of the thecal sac without mass effect upon the spinal cord." [Filing No. 15-13, at ECF p. 22.] While the ALJ relayed the impressions noted by the physician who ordered the test, he did not otherwise subject this record to any medical expert when determining how it related to the remainder of the record evidence and in relation to the medical opinions.

The ALJ should not have unilaterally interpreted the ramifications of such complex medical evidence. Thus, the ALJ erred when he failed to subject Plaintiff's newer records to the interpretation of medical experts and instead concluded, on his own, that the more recent MRIs and clinical examination findings were consistent with the light RFC and limitations he assessed. The lack of proper review of this evidence may have caused Plaintiff significant harm, as a

finding that Plaintiff was limited to less than "light" work in relation to standing and walking

requirements would have resulted in a finding that Plaintiff was disabled prior to June 11, 2018,

due to her inability to perform past relevant work and the SSA's vocational guidelines. *See*

Appendix 2 to Subpart P, 20 C.F.R. § 404 (201(g)). Therefore, remand is required to allow the

ALJ to summon a medical expert to provide an informed basis for determining whether Plaintiff

was disabled before June 11, 2018.

Plaintiff also argues that the ALJ failed to properly consider and evaluate the opinions of

two of her treating physicians, Dr. Jose Vitto and Dr. Patricia Wiseman. Plaintiff claims both

Dr. Vitto and Dr. Wiseman expressly contradicted the ALJ's conclusion that Plaintiff could

perform the lifting and carrying requirements of light work. The ALJ gave little weight to these

opinions, concluding they were inconsistent with the physicians' own physical findings and the

record of other physicians during the same period. Plaintiff takes issue with the fact that the

ALJ's decision failed to acknowledge that the opinions of these two treating doctors were in

"complete agreement" with one another. [Filing No. 18, at ECF p. 24.] The Commissioner

defends the ALJ's analysis as containing an adequate explanation with good reasons for

discounting the opinions of Dr. Vitto and Dr. Wiseman. Given the Court's conclusion that the

ALJ must summon a medical expert to evaluate Plaintiff's subsequent medical records, it is

sufficient to note that remand will also allow the ALJ to reconsider the opinion evidence from

Plaintiff's treating physicians and ensure that the ALJ's analysis addresses these opinions in light

of the newer MRI evidence and clinical examination findings.

**IV.     Conclusion**

The ALJ impermissibly and unilaterally interpreted Plaintiff's recent medical imaging

without enlisting the assistance of medical experts.  In doing so, he placed great weight on

opinions from state agency consultants who did have an opportunity to review this imaging or a

multitude of other recent evidence.  For these reasons, Plaintiff's request for remand [Filing No.

18] is granted pursuant to sentence four of 42 U.S.C. § 405(g).

Date: 7/15/2021

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email